Honored and privileged to represent Todd Abshire in this matter. I'm sure your honors are well familiar with the case and the brief. And if you can speak, make sure you're speaking into the microphone so the recording picks it up and we can hear you. Thank you. The first point I want to make is that genuine issues of material fact as to what the essential functions of this job are. There are four different job descriptions. Two job descriptions were before the interviewing and advertisement of the position. One is record 5311, August 20, 2013. It says nothing about being on call 24-7. The second one before the advertisement interview is 10-113, record 17002. It does say responsibilities and or preferences for 24-7 call. Now, there are two more job descriptions that are after the advertisement interview. One at record 513, November 13, 2013. My argument is that they present fact issues. What are the issues with respect to whether they're what are his essential functions of his job? All right. And if we declare they are or are not, and the facts will show that he cannot perform them or has not performed them, what do we do then? Is your argument basically accommodation, that they refused to accommodate him? It's an accommodation claim and a termination because of disability claim. Right. In other words, they terminated him because of his disability. Right. You're saying he was qualified to perform? Yes. I'm saying there are fact issues as to that. And I'll just let me I'll finish the thing about the job descriptions and I'll go right into that, Your Honor. Okay. On the job descriptions, you say there's factual disputes about whether the job posting said he had to be on 24-hour call. Right. If we think there is no fact dispute about that, that there was clear indication of that in the job notices, do you lose then? You're not arguing he could have done 24-hour duty, right? I don't think he could have done 24-hour duty. No, I really don't. I think that, I mean, this man has a serious illness. I think rest is important to that. I think we can all know that rest is important to someone who has an illness like this. So, but, I mean, how far do you take that? I mean, can you get somebody on vacation or when they're in church or when they're at a funeral or something like that, 24-7? I mean, I think you have to look at it realistically. There's no real proof that this is an essential function of this job. There's no proof as to what this job really entails. Don't, I mean, law enforcement jobs typically require the officer to be available to go out and arrest someone late at night or whenever they find that person who the agent's been investigating? It depends on the nature of the law enforcement job. It is specific. It's case specific. We have the benefit of having Dr. Phillips Lewis-Sinak as an expert. He's a board-certified psychiatrist, been practicing over 30 years, worked for the Veterans Administration for many years. His specialty is treating war veterans who have been traumatized by emotional illness. He said very clearly that it was his view that Todd could perform the job, and that he talked about the fact that he acknowledged that he could not perform some of the duties of the job, that he had to have help to do particular things. He could not fill out forms. He was not good at math. He didn't know how to do the breathalyzer tests and all of that sort of thing. Well, that's what the defendant says. I don't think there's a lot of— He denied it. Well, he said he had problems. He was trying hard. I don't care how hard you try. If you don't meet the minimum of qualifications, all your effort doesn't make any difference as far as the ADA is concerned. I believe that there are, in fact, issues to that. We have this very qualified expert saying the man served successfully as a Marine. He served in the Iraqi War. He was a corporal. He was promoted to sergeant. He was honorably discharged. He was awarded a good conduct medal. Now, the Marine says he can do a job, a good job. Now, you can't tell me that the job of a game warden is more arduous than being in a combat Marine. It's not even more arduous, but it requires different qualifications. Well, it is paperwork. He didn't qualify to be a Marine, but on the other hand, he couldn't perform this job. I think it's a jury issue with that testimony because certainly as a Marine, there's some paperwork. Now, I think one of the things that's happened here is the defendants have made this job look greater and bigger and more complicated than it really is. Let me, in that regard, I think this is a perfect time for me to get back to your original point. The target that we're talking about here for him to exceed is that he has to be qualified, and you pointed out that there were two job descriptions that existed prior, prior, and I'm only talking about the ones prior, so let's put the other two aside. One of them had to do with being subject to call 24-7, which we'll spend some time talking about. The other one had to do with the ability to complete forms and paperwork, which I believe was also something that was later talked about as a reason for his discharge or for his struggles on the job. Are those the only two things that we're talking about when we talk about qualification? I really think so. I mean, he was doing the job. He asked for help with the paperwork. It's a typical symptom of PTSD that you have concentration and memory deficits, and the guy was struggling. He asked for help, give me some more personal supervision. Let me see how you fill this out. So you're saying the factual dispute is not the job description, since we've kind of nailed that down, correct me if I'm wrong, but rather the factual issue that you want this court to examine is whether or not he could do the job and whether or not a reasonable accommodation was made to help him do the job. Is that a fair statement? That's a fair statement, but I don't want to skip past the job description, because under the Nall v. BNSF railway case recently decided by this court, that is a fact issue, and the job description that the district court relied on was a post-employment job description. It should be only the two that existed before, the last one being the October 1, 2013. Right. Under the statute, that is what shall be considered. Even under, since we're talking about a de novo review here, even under Nall, if we limit ourselves to those two, don't both of those two include a 24-7, subject to 24-7 call, and also an ability to file appropriate paperwork? Yes, but it does not preclude the fact that that is accommodatable. Well, that's another issue. Right, right. What was this job really? I mean, Dr. Synak makes two points when we discuss in the qualified thing with him. He said there's one type of cop that works in New York City where there's constant communication. There's hundreds of police officers. It's on the job confrontation with criminals. It's a very complex job. Compare that to the scenario where you have somebody that is in a boat out in Cameron, Paris, in a marsh or a lake. I mean, you can't, it's not the same. It has to be fact specific as to what the essential functions of the job are, and that is a defendant burden of proof. Let me ask you specifically on those two qualifications, what is the accommodation that you would present that's in the record that you intended to present to a jury to try to convince? On both of those, the 24-7 and the ability to fill out the appropriate paperwork and have it filed, what are the accommodations that you would argue to a jury should have been made? With regard to the 24-7, I would say that the statute says that modified work schedules are accommodatable. With respect to the paperwork, Todd asked for assistance with the paperwork in terms of more one-on-one supervision and explanation of it, and there could be some time changes in the time that he had to submit it. He also asked for copies of the lieutenant's papers to show a good example, a good template, how to do these things. Are those already available to him, the prior record? Yeah, you know, he could go get them, but, you know, I mean, we all say, look, we support the troops, but when a veteran who is a war hero basically needs a job, it's cold shoulder, and this is all about being a cold shoulder with this Department of Wildlife and Fisheries. It's just wrong, and it's not in accordance with the law. You know, there are other factors in the case, but I want to skip around a little bit because of the time, and I'm going to come back to a few points if I can. But there's a thread of evidence in this record as to discriminatory intent. Stuart Guillory, a co-worker, testified at Record 1569 that at the Academy, the guys were talking about Todd taking crazy pills, and apparently this accusation followed him throughout his employment. At Record 1769 and 2132, it's testimony that Colonel Martin called from the Academy to Captain Buod and told Captain Buod that Todd Abshire had PTSD, and Captain Buod is the one that Todd just testified that he felt like he was going after him. Todd felt like he was the butt of jokes. I mean, he's just sort of a good old boy, cliquish kind of a thing. Todd is unusual, as Dr. Sinek explained, and it's understandable people would be uncomfortable with him because he's got this illness. But we ought to be able to accommodate that, particularly when the accommodations are so simple as assistance with paperwork. It's not like he did something grievous. He didn't have any real problems until April of 2015, that I can recall the record. He was promoted. When did he get out of the Academy? He got out of the Academy. I have that. I thought it was fairly soon after that the problems arose. He attended the Academy until June 10, 2014. The following spring. Yeah, but, I mean, he worked successfully. He's basically, I mean, maybe something little there, but I don't recall anything until April of 2015, when they went out to his house during a scheduled vacation, and a jury could infer that they were out to get him. And they went to his home to schedule a vacation, and it comes back that Buart is the one that recommended Todd's termination. We also have an issue as to the credibility of the defendant. The defendant claims, well, they first claim that they didn't know anything about the PTSD, and then in discovery we found out that that was just not true. And then they say, well, we didn't receive his e-mails requesting accommodations. Well, that presents a credibility issue, and it's shifting duties in the job description that the jury might find is sort of contemporaneous with the idea that he's taking crazy pills, and Colonel Martin calls to Captain Buart, tells him about his problem, and you got on your hands there. And the last thing I want to say about pretax is that everybody is having problems with the reports. That's what they testify. All the agents were having problems with the reports. But who was singled out? Who was disciplined for that? One person, Todd Absher. Now, you know, a jury could infer from those facts that there was a discriminatory intent, although with respect to the failure to accommodate case, we don't have to prove that. But with respect to the termination case, as I'm sure the Court's aware, there's a concurring opinion in the Null v. BNSF case. It makes a great deal of common sense to us. An employer says, well, he's terrible, he's so disabled, we have to fire him, and then try to turn around and say, oh, we didn't fire him because of his disability. I mean, a jury could conclude that that is nonsense. Absolutely. And so we have a situation here where we have a man that was not asking for terribly difficult, certainly not expensive accommodations, and he was terminated because of his disability. He deserves his day in court, and this matter should be reversed and remanded for trial. Thank you very much. Thank you, Mr. Smith. We have for Ms. Keenan.  May it please the Court. Christine Keenan on behalf of the Department of Wildlife and Fisheries. So, Your Honors, we've hoed in already on really the issue that can decide this appeal, and that is whether or not Mr. Abshire has presented admissible evidence that would establish a genuine issue of material fact as to whether or not Mr. Abshire is a qualified individual with a disability under the ADA, the Rehab Act, or the Louisiana Employment Discrimination Law. Those are the issues here. And as Your Honors well know, that an essential element of a disability discrimination claim, whether it is the discriminatory termination claim or the failure to accommodate claim, whether it's either of those, he must first establish that he is a qualified individual with a disability. And it is on that issue that we submit that summary judgment was properly granted, that there is no genuine issue of material fact on that particular issue. And Mr. Smith has already identified for you the issue there, which is it is the Department's position that Mr. Abshire could not perform a critical function, which was being on call 24-7. And so we've already talked about some of those areas where we have submitted record evidence to show that, in fact... Was he ever called in an emergency circumstance? It seems to me, and correct me if I'm wrong, in the record, he was called because he had some paperwork deficiencies. Was there ever a circumstance where they needed him out in the field, like Judge Costa said, to apprehend somebody or immediate investigation or an emergency, and he was unavailable? There's no record evidence of that, Your Honor. Correct. He was called on several occasions because he had different paperwork issues he needed to fix, and the captain was looking for him on different occasions because he wasn't there. I don't know the reasons. The record doesn't establish what those reasons are. Now, the record shows that the 24-7 was an essential duty of the job. What was the testimony that justified that requirement as essential to the performance of the job? Yes, Your Honor. So we submitted the affidavit of Colonel Broussard, who talked about why that was important, which was evident, too, from the job descriptions. And as you pointed out, this is a law enforcement position. And so as Judge Broussard testified in his affidavit, these positions are often called, particularly the wildlife and fisheries positions, for search and rescue functions, and that's primarily the 24-7 rule, is they never know when they're going to get called out to go pull somebody out of a river or somebody who's been lost in the woods. Did he give any examples of where that had been invoked? He didn't provide examples of that, no, Your Honor. He just indicated that those were the bases by which the 24-7 rule was an essential function of the job. Everybody, what was their name? Everybody. What classification was that restricted to? Cadet through Colonel. He had that as well. And he will take vacation, right? I mean, you're never going to have everyone in the department out being able to do a late-night rescue mission. Right. Now, there is no record testimony on that, but they will tell you they get called back from vacation. And they will tell you that this rule is because they don't have that many. You'll see in the record in his district, and you will see this is in the record, they only have like 12 agents in their district to cover, you know, three or four parishes. So they don't have that many. It's not like they have a slew of 100 police officers. They've got like, you know, 12 in their district. Who has the burden of proof on what's – I know he has the burden of proof to show he's a qualified individual, but who has the burden of proof on whether a job function or requirement is essential? I think the employer has that, right? And then the regulations certainly say that. There's deference to an employer's judgment as to what is essential. And so here in the record, you know, obviously there has been a whole lot of hay about, you know, whether or not, you know, what job functions are essential, and there's differing job descriptions. But one thing is certain. There are a number of documents that establish that 24-7 is an essential job function, report writing is an essential job function, law enforcement duties are an essential job function, understanding what those policies and procedures are so you can go out in the field, right, and investigate and do those law enforcement functions. Do you agree that they have to be stated prior to engagement of employment? Yes, Your Honor, and it says that. It says prior to interviewing and prior to posting the job application. So interviewing is a piece, too, and if you look at the sequence of events, those particular job descriptions who have the October 1 job posting, he applies on October 15th, right? So he's applying to the job posting that says 24-7, right? Then there's another job posting, November 13th, and that's the one that has, again, 24-7 in it multiple times. What does it say on the two that existed prior to his employment? So that would be the enforcement manual? Yes, okay, but what does it say about the report writing in particular before he applies and gets the job? So report writing in particular. So the enforcement manual actually talks about that. The job posting also talks about report writing as well. So those are the two before he applies for the job, right? And then remember, he doesn't get the job until late November, right? So, I mean, there are actually really three documents that have all the duties set out before he actually is made a job offer. So there really are three different job descriptions. But all of those talk about the actual 24-7, and then if you look in the record for the enforcement manual itself, it talks about functions of work for the cadet at R-531, where it talks about, again, law enforcement patrol component, voting safety regulations, examples of work, investigating conducting law enforcement activities, search and rescue response, assist other law enforcement agencies in the apprehension of criminals, investigating complaints. So all of those things are in there as well. Why don't you tell us about the job, about the report. The reports that are anticipated to be written by an employee, especially a new employee, as the employee continues to progress, goes to the academy and is trained, are these reports the types of things that are online where they can, is it checking boxes and filling in blanks, or is it sort of writing prose that I went out and he described the whole day or mission, which are both? Sure, Your Honor. That's a great question. These, when we say reports, it can be anything from a citation, and most of them are citations that are then used in criminal proceedings, right? So you can imagine the significance of those reports. Some of them are reports that relate to travel expense, mileage, you know, simple governmental reports. So it's a combination of both. The ones that were critical, obviously, are the report citations that are going into case prosecutions, which there were some issues with those as well. Some of it was simply just, hey, you didn't get your time sheets in, you didn't get your expense reimbursements in, and that was causing backlog. So it really kind of ran the gamut. Didn't he ask at one point for the electronic version of reports where it would assist him in generating the report rather than start from scratch? Yes. Didn't he ask for a template several times? Yes, he did. Were those ever provided? Well, he was given the samples of agents' old reports that he could have utilized. I mean, he was given those. He had a whole disk of those. So he had those, and he testified that he had that. In fact, he turned those over in discovery, too. So he absolutely had those, and he could use those forms and just change the prose that was in those. So, you know, to that point, remember, on summary judgment, what he has to do on this issue of qualification is he's got to show that he could perform the essential functions of the job in spite of his disability. And so you will see in his brief, and even today from argument, the argument is he really can't perform the essential functions in spite of his disability. So then the other piece of that puzzle is that he's got to offer admissible evidence that a reasonable accommodation of his disability would enable him to perform the essential functions of the job. And so I think that's sort of where we are. What is the reasonable accommodation that Mr. Abshire has requested that would allow him to perform the essential functions of the job? And the court went through that analysis in his ruling below, and really there has been no accommodation requested with respect to the 24-7 requirement. There really was nothing in the record. Now, Mr. Smith has suggested that a modification to his schedule should deal with that issue, but, Your Honors, the regulations are clear with respect to an essential function of the job. You do not, an employer does not have to remove an essential function, really, or modify it. And there has been no testimony or evidence that that particular job requirement has been accepted to, wavered, or modified for anybody in the past. Colonel Broussard has testified there's been no waiver to that requirement, and the plaintiff has not offered any evidence to suggest that there's been any waiver to that requirement. So, again, the regulations would support that an employer is not obligated to do that. So really on that issue alone, the plaintiff's claims, all of them fail. Now, to move on to some of these other issues, the report writing and the understanding of the policies and procedures, so the big one that the plaintiff raised was performing the standard field sobriety test. Again, that is set forth in the job descriptions, and the plaintiff has not really come forward with an accommodation for that other than one-on-one time. But, again, he worked with other agents. He was given feedback from his lieutenant and had been for 22 months, and none of that had worked. So according to the district court below, and correctly so, the accommodations he's requested had been in place for many, many months, and none of that had shown any effort to allow him to perform the essential functions of his job. So the plaintiff has not carried his burden of proof in showing that there was an accommodation that would enable him to perform the essential functions of his job. So for that reason, because we get past that particular piece, qualification, the rest of the claims fail. You don't even get to discriminatory termination, and you don't get to the reasonable accommodation piece. And so for that reason, we think this case can be submitted on that basis alone. Your Honor, do you have any questions? All right. Thank you, Counsel. Okay. Thank you so much. Mr. Smith? Thank you, Your Honor. One thing I'd like to—several things I'd like to mention is that the defendant does have the burden of proof on the— what is a reasonable accommodation that's settled law in this circuit. And there's very little proof of that, if any. I don't believe there are any examples of these reports that they have to write or the tickets or the citations they have to write. My impression is it's simply a citation with a brief report. I saw this boater, and he had too many fish or something like that. What functions of the job could he perform? He could perform everything. He patrolled. What do you mean? He did arrests. You know, patrolling a boat. He did arrests. He successfully made arrests. He did DUI arrests. He did everything. I thought there was some suggestion that he couldn't do the DUI. No. There was one situation where they criticized him for not being able to do a field sobriety test because he had a problem with his eyes twitching and the eye part of the field sobriety test he had a problem with. And he basically did the job. They just jumped on him and picked on him. But I want to say that these job descriptions in terms of essential functions, the one after the fact, they say, Now, you need to, the supervisor needs to rate these job functions in the order of complexity and importance, and all of the functions have to equal 100%. That's how you get this other information about the relative importance of the function. They didn't fill that out in the ones that they have. They didn't fill that out. There's no information about that, and it's their burden to prove. They said there was an E initial on one of them, and the district court found that that meant essential. But that's a fact issue. There's a, right before there's a paragraph about effective execution enforcement. The jury might say, Well, that refers to the thing. But they're trying to make these job descriptions just as hard as they can. Did he get unsatisfactory job reviews on several occasions? No, one time, one time. And what was the basis for that complaint? Basically the paperwork issues, the paperwork issues. But now, keep in mind, he's not required to write the great American novel. I mean, these are fairly routine things that police officers do every day. You don't see these rocket scientists even in the copies. When cops testify, I mean, they get cross-examined on any little thing that's missing from that report. That's true, that's true. But there are several levels of review that go into that before you present a case in court. It goes to the prosecutor and everything like that. But, you know, there's one thing about the reasonable accommodations. The judge ruled that we didn't show that he could be accommodated to perform all the essential functions of the job. Well, this court addressed that issue in the Feist v. Louisiana Department of Justice, 730 Federal 3rd 450 of 2013. And this court held that you don't have to, the plaintiff does not have to prove that he could perform all these, an accommodation would allow him to perform all the essential functions of the job. There's another case I want to point out to the court. It's not an in-circuit case, but it makes a lot of common sense to me. It's Haas-Stadler v. College of Booster, 895 Federal 3rd 844. And that dealt with a modification of job schedules. And the court held that the employer must show, as far as burden of proof of essential functions, why a particular schedule is an essential function. And for them to just say, well, it is an essential function, that's not enough. They have to show why it's an essential function. And that is missing here. I'll also add that there's no record evidence that I'm aware of Todd having any of the supervisor's examples. He asked for, he wanted to sit down with these people and have some one-to-one supervision. Doctors are not such critical with somebody with a condition like this. And I think that's what I have to say to the court. I appreciate very much your honest time and consideration. Thank you very much. We appreciate both sides helping us with this case. It will be submitted.